James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Edmund A. Normand
Joshua R. Jacobson
NORMAND PLLC
3165 McCrory Place, Ste. 175
Orlando, FL 32803
(407) 603-6031

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HALIMAH MUHAMMAD, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM INDEMNITY COMPANY,<br><br>Defendant. | Civil Action No.<br><br><br>**COMPLAINT and**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Halimah Muhammad ("Plaintiff"), individually and on behalf of others similarly situated, brings this suit as a class actual pursuant to Fed. R. Civ. P. 23(a) and (b)(3), against Defendant State Farm Indemnity Company ("Defendant" or "State Farm"), respectfully represented as follows:

**INTRODUCTION**

1.  This is a Class Action lawsuit by Plaintiff, who was the named insured under an automobile insurance policy issued for private passenger auto physical damage including

comprehensive and collision coverage (the "Policy"), pursuant to which Defendant was required to pay the cost to repair an insured vehicle up to the "Actual Cash Value" ("ACV") of the insured vehicle.

2. Insureds, such as Plaintiff and the putative Class Members, pay a premium in exchange for State Farm's promise to repair any damage to an insured vehicle caused by a covered peril. However, State Farm's obligation to repair any damage is not limitless; rather, it is limited (or capped) to the ACV of the insured vehicle – for example, State Farm is not obligated to spend $20,000 to repair extensive damage to a vehicle that is only worth $5,000. Under such circumstances, where the cost to repair damage exceeds the value of the vehicle (less retained value), the vehicle is considered a "total loss." If a "total loss" occurs, State Farm's contractual obligation is limited to paying the ACV of the total-loss vehicle.

3. The goal of ACV in insurance contracts is that of indemnity. By promising to pay the cost to repair the vehicle limited at ACV in the event of a total loss, Defendant promises to put its insureds back to their pre-loss position.

4. When determining the ACV of a total loss vehicle, it is improper for an automobile insurance company, such as State Farm, to undervalue and underpay the claims by manipulating the data used to value the vehicles.

5. State Farm is required under New Jersey law to offer a cash settlement based upon the average retail value for purchase of a comparable automobile in the local market area of the insured, if such an automobile is available in that area. For any deviation from this procedure State Farm must document and justify in detail the settlement offer and the underlying calculations. New Jersey Admin. Code 11:3-10.4.

6.     Notwithstanding its obligations, State Farm systemically fails to pay its insureds the ACV of their total-loss vehicles by applying an improper and unreasonable Typical Negotiation Adjustments ("Negotiation Reduction") to the value of the vehicle. This reduction is contrary to appraisal standards and methodologies, is not based in fact, is contrary to the used-car industry's pricing and inventory management practices and is applied by Defendant solely as a basis to reduce the amount owed to its insureds after a total loss.

7.     The across-the-board Negotiation Reduction does not reflect reality. Indeed, Defendant applies the "typical negotiation" adjustment without contacting the identified dealerships or sellers, or considering whether the online retailer ever discounts its vehicles. Notably, in applying a universal percentage-based "typical negotiation" adjustment reduction, Defendant failed to consider that it is increasingly the dominant practice in the used car market to avoid price negotiation by implementing "no haggle" pricing, particularly as to internet-posted prices. Particularly during the COVID-19 pandemic, and the related supply chain problems with parts such as electronics for vehicles, used cars have been selling for a premium, with sale price typically exceeding the posted price.

8.     Regardless, State Farm applied a Negotiation Reduction of approximately 3.1% for all comparable vehicles listed in Plaintiff's valuation report despite that the vehicle prices were pulled from multiple different dealerships. (Exhibit A ("Valuation Report") at pp. 5-6). There was deducted an identical 3.1% downward reduction to each of the base values of the four comparable vehicles, which were then used to derive the value of Plaintiff's total loss vehicle, resulting in a 3.1% deduction in Plaintiff's vehicle value and Plaintiff's ultimate insurance payout. *Id.* This 3.1% reduction is wholly arbitrary and not based on any statistical, objective, or verifiable data.

9. Moreover, to arrive at the 3.1% Negotiation Adjustment, State Farm categorically excluded transactions that undermine its flawed thesis: for example, transactions where the sold price exceeds the list price and every transaction where the sold price equaled the advertised price, allowing Defendant to thumb the scale in its favor. This practice ignores current market realities in which dealerships charge more than advertised price to customers.

10. The Negotiation Reduction is not documented nor justified in detail. The basis for the settlement offer with the 3.1% reduction and how it was derived was never explained to the Plaintiff. The only purported explanation for the reduction in the offer is found in Plaintiff's multi-page valuation report is a general, nondescript statement buried deep in the document. (*See* Exhibit A at pp. 5-6) (providing: "[t]he advertised price of [each comparable vehicle advertised price] was adjusted to account for typical negotiation"). No other explanation was provided by State Farm to justify the Negotiation Reduction.

11. The Negotiation Reduction was applied on each of the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. The deduction is neither specific nor appropriate as to dollar amount, and no explanation is provided as to the evidentiary basis for the 3.1% across-the-board reduction.

12. This pattern and practice of deliberately undervaluing comparable and total loss vehicles when paying first-party automobile total loss claims results in State Farm underpaying insureds for the ACV of their total-loss vehicles, in breach of the clear terms of State Farm's insurance policy.

13. Plaintiff and the putative Class Members lived up to their end of the bargain by paying the premiums owed and abiding by all contractual requirements. State Farm did not. Rather,

State Farm reduced the ACV value of total-loss vehicles through use of the arbitrary and unsupported Negotiation Reduction.

14.     Defendant's standardized policy language as to coverage for the ACV of total-loss vehicles is present in every auto policy issued by Defendant in New Jersey.

15.     State Farm's failure to pay the full and complete ACV of insured vehicles on first-party claims constitutes a material breach of contract as to Plaintiff and every member of the putative Class defined herein.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because (a) Plaintiff is a member of the putative class, which consists of at least 100 members, and Plaintiff and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars; and (c) none of the exceptions under § 1332(d) apply to this claim.

17.     At all relevant times, Plaintiff and putative class members were New Jersey policyholders and citizens. The defendant is a citizen of Illinois because it is incorporated in the State of Illinois and keeps its principal place of business in Bloomington, Illinois.

18.     Venue in the United States District Court for the District of New Jersey is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiff's claims and causes of action occurred in this judicial district, and because the Defendant was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## NATURE OF THE CASE

19.     Defendant is an automobile insurer in New Jersey and provides, *inter alia*, coverage for first-party property damage under collision and/or comprehensive coverage. Such policies,

issued to Plaintiff and all putative Class Members, are form policies that promise to pay for loss up to a limit on liability of ACV.

20. Most car accidents are "partial" losses, which is the term used where insurers (including Defendant) pay to repair the damage to a vehicle. Where repair of the vehicle is impossible or uneconomical, however, the loss is considered a "total loss." When Defendant determines that a vehicle is a total loss it elects to pay the vehicle's ACV.

21. Pursuant to the basic tenets of insurance law, once Defendant elects to pay ACV, it is bound by that election and cannot thereafter change its mind and decide to later pay the cost to repair or replace the amount of loss. *See* 12A Couch on Ins. § 176.23. Put differently, when Defendant declares a vehicle a total loss and voluntarily invokes its limitation of liability, it is obligated under its insurance Policy to pay the ACV of the vehicle to the insured.

22. Under Defendant's Policy with Plaintiff (and Class members), in the event of a total loss, it must pay the "actual cash value" of the covered vehicle. The Policy does not define ACV.

23. Total loss scenarios are taxing. Not only has the insured likely suffered more than a minor accident – and thus often dealing with potential medical injuries – there are numerous insurance-related issues, such as payment for storage, investigation of the vehicle and claim, finding a replacement vehicle, and so forth.

24. New Jersey Administrative Code 11:3–10.4 requires insurers making cash settlement to calculate settlement value "bear[ing] in mind at all times that the insured's position is that of a retail consumer." The Code section provides four methods for valuing total loss vehicles, with associated disclosure mandates on insurers.

25. Defendant fails entirely to abide by its contractual requirements by failing to pay its insureds the ACV of their vehicles.

26. Defendant purports to calculate the ACV of total-loss vehicles via a third-party vendor, Audatex or AudaExplore, through a system called Autosource Market-Driven Valuation ("Autosource"). Ostensibly, the Autosource system identifies the list price of comparable vehicles, which it then adjusts based on factors such as differences in equipment, packages, and/or condition between the comparable vehicle and the total-loss vehicle. However, in violation of New Jersey law and the policy promise to pay ACV, Defendant, incorporates unfounded Negotiation Reductions.

27. Defendant represents that the Negotiation Reduction reflects some sort of average difference between list price and "what the dealer would be willing" to sell it for. However, Defendant does not actually base the Negotiation Reduction on conversations with the sellers of the comparable vehicles or even statistically valid data or calculations. Indeed, the 3.1% reduction applied to Plaintiff's vehicle is not supported by a comparison of list versus sold vehicles prices within the State of New Jersey. Upon information and belief, State Farm's 3.1% Negotiation Reduction is arbitrary, not based on valid data, and is nothing more than another illegitimate and capricious way to undervalue the total-loss vehicles.

28. Upon information and belief, Defendant instructs Autosource to apply the Negotiation Reduction. Other insurers who use the Autosource system do not instruct Autosource to apply the Negotiation Reduction to the price of comparable vehicles.

**PLAINTIFF'S ACCIDENT AND VALUATION**

29. At all times relevant, Plaintiff was insured under a policy of insurance issued by Defendant for a 2014 Nissan Altima.

30. On or about October 30, 2021, Plaintiff's vehicle sustained damage. After Plaintiff submitted a physical damage claim, Defendant declined to pay to repair the vehicle, determined it was a total loss, and elected to pay Plaintiff a cash settlement for the ACV of the vehicle.

31. Defendant purportedly determined that the vehicle value was $13,503.00, to which Defendant added sales tax and a title fee and subtracted the deductible for a total of $13,462.07. *See* Exhibit B ("Settlement Letter") at p. 1.

32. To arrive at this estimated vehicle value, Defendant relied on the Autosource valuation report, which purports to contain the values of comparable vehicles listed for sale (or sometimes recently sold) in Plaintiff's geographic area. The report also contains a purported valuation for Plaintiff's total-loss vehicle, which is based on the advertised prices for the comparable vehicles listed in the report. The report then adjusts the advertised prices of the comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. (Exhibit A).

33. State Farm then applied the 3.1% Negotiation Reduction to each comparable vehicle, resulting in an across-the-board deduction in vehicle price for each comparable vehicle, which thereby caused a reduction in the vehicle value of Plaintiff's total-loss vehicle. Defendant provided no data specific to the comparable vehicles or any explanation of industry practices in the valuation report that would support the Negotiation Reduction. (*Id.*).

34. Plaintiff does not dispute the accuracy of the advertised prices for the comparable vehicles. Plaintiff does not dispute that the comparable vehicles are a fair representation of comparable vehicles in the market area. Plaintiff does not dispute that State Farm can adjust the comparable vehicles based on differences (if any) in equipment, mileage, and vehicle configuration. Plaintiff does not dispute that State Farm accurately identifies differences (if any)

in equipment, mileage, and vehicle configuration. Plaintiff does not dispute the amount of the adjustments State Farm applied to account for the differences (if any) in equipment, mileage, and vehicle configuration.

35. Put differently, Plaintiff does not challenge the Autosource methodology except for the calculation of the Negotiation Reduction, which Plaintiff alleges is arbitrary, deceptive, and made in bad faith.

36. By failing to pay full ACV by virtue of the Negotiation Reduction, Defendant failed to put Plaintiff back to her pre-loss position and thereby breached its insurance policy.

### DEFENDANT'S CONDUCT BREACHES ITS CONTRACTS AND VIOLATES NEW JERSEY LAW

37. Defendant is aware that the Negotiation Reduction applied in the Autosource valuation report results in anti-contractual insufficient valuations, and that, were Defendant to adhere to an appraisal method prescribed by New Jersey law, the amounts paid to total-loss insureds would be significantly higher.

38. The arbitrary and capricious vehicle values provided by Autosource, because of the Negotiation Reductions, are lower than the values of a comparable automobile vehicle and concomitantly lower than the vehicle's fair market retail cost. Moreover, it is lower than the vehicle's ACV, as reasonably understood under the Policy and as conformed to New Jersey law.

39. Defendant's failure to properly pay the ACV of an insured's loss constitutes a breach of contract.

40. Moreover, the aforementioned conduct – and breaches of contract – are the result of actions that constitute bad faith, and are capricious and arbitrary in violation of Defendant's duties and obligations to its insureds.

41.  Defendant's conduct set forth herein and use of the Negotiation Reduction violate Defendant's "duty of good faith and fair dealing" by failing to act fairly and in good faith with its insureds.

42.  Upon information and belief, Defendant intentionally undervalues the total-loss claims through application of the Negotiation Reduction and otherwise violates its duty of good faith and fair dealing and New Jersey law.

43.  Defendant's Policy, to the extent inconsistent, is conformed to comply with New Jersey law.

44.  All conditions precedent to the initiation of this suit have been satisfied.

## CLASS ACTION ALLEGATIONS

45.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff seeks to certify and represent the following Class:

> **Valuation Class:**
>
> All State Farm Indemnity Company insureds, from the earliest allowable time through the date of resolution of this action, who received a first-party total-loss valuation and payment on an automobile total-loss claim that included a "typical negotiation" or similar adjustment.

46.  Excluded from the Class are Defendant and its agents, employees, subsidiaries, parents, and related entities, as well as the Judge assigned to this case and his staff employees. Also excluded from the Class are the undersigned counsel and anyone employed in their law firms.

47.  **Numerosity:** Although unable to allege a precise number of Class Members absent confirmatory discovery, upon information and belief, including investigation by the undersigned and examination of the premiums written by Defendant over the past ten years, Plaintiff believes that the number of members of the Class numbers in the thousands, such that members of the Class

are so numerous that joinder of all individual claims at issue is impracticable. Thus, the Class are sufficiently numerous within the meaning of Rule 23(a)(1).

48. **Commonality:** This litigation raises common questions of law and fact subject to common resolution within the meaning of Rule 23(a)(2), including:

   a. whether Defendant's application of a typical negotiation adjustment results in a breach of Defendant's contractual obligation to pay ACV;

   b. whether Defendant's application of a typical negotiation adjustment is a breach of the covenant of good faith and fair dealing;

   c. whether Defendant's application of a typical negotiation adjustment complies with New Jersey Admin. Code § 11:3–10.4;

   d. whether Plaintiff and Class members are entitled to damages and the measure of damages owed.

49. **Typicality:** Plaintiff's claims and the defenses thereto are typical of members of the Class within the meaning of Rule 23(a)(3). Defendant injured Plaintiff and members of the Class through uniform misconduct and Plaintiff's legal claims arise from the same core practices. Plaintiff suffered the same harm as all Class members and Plaintiff's interests are identical to those of the other Class Members.

50. **Adequacy:** Plaintiff will adequately – and zealously – protect the interests of members of the Class. Plaintiff is unaware of any interest in conflict with those of the Class, and Plaintiff and the undersigned have sufficient and adequate resources to prosecute this claim. Plaintiff is sufficiently knowledgeable concerning the subject matter at issue and is committed to protecting putative class members from any unfair or harmful conduct. Moreover, Plaintiff has retained the undersigned as counsel, who, collectively, have successfully litigated hundreds of class actions, many of which in the insurance context, through settlement and litigated judgments. Included in the undersigned are New Jersey counsel who have significant experience in class

litigation and are well-versed in New Jersey law and local rules and procedures. As such, the adequacy requirement of Rule 23(a)(4) is satisfied.

51. **Predominance:** The aforementioned common issues of law and fact predominate over any individual issues within the meaning of Rule 23(b)(3). Issues of liability are common to the class, and, as such, even if issues of damages are individualized, that would not preclude class treatment. Moreover, while the *amount* of damages will vary, the *measure* of damages will not.

52. **Superiority:** Class treatment is superior to any other viable alternative method of adjudication within the meaning of Rule 23(b)(3), in that:

   a. Neither the size of the Class, nor any other factor, make it likely that difficulties will be encountered in the management of this case as a class action;

   b. The prosecution of separate actions by individual Class Members, or the individual joinders of all Class Members in this action, is impracticable and would create a significant and unnecessary burden on the resources of the courts and could result in inconsistent adjudication, while a single class action can determine, with judicial economy, the rights of each member of the Class;

   c. Because of the disparity of resources available to Defendant versus those available to individual members of the Class, prosecution of separate actions would work a financial hardship;

   d. The conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each Class Member and meets all due process requirements. A class action is also superior to the maintenance of these claims on an individual basis when all actions arise out of the same circumstances and course of conduct; and

   e. Because the claims are relatively small compared to the cost, time, and expense of litigation, individual actions will be rendered financially impractical, if not impossible.

53. Class members can be identified and ascertained through objective criteria within Defendant's own possession.

## COUNT I: BREACH OF CONTRACT
**(on behalf of the Valuation Class)**

54. Paragraphs 1–53 are hereby incorporated by reference.

55. This Count is brought by Plaintiff individually and on behalf of the Valuation Class.

56. Plaintiff and all members of the putative Class paid all premiums and otherwise satisfied all conditions precedent, as evidenced by, *inter alia*, the fact that Defendant determined the claims were covered claims.

57. Plaintiff and all members of the putative class made claims under their insurance contracts, which Defendant determined to be total losses. Defendant purported to pay Plaintiff and each Class member the ACV of their totaled vehicles.

58. Defendant, however, failed to fully pay ACV because Defendant applied the arbitrary Negotiation Reduction to comparable vehicles, resulting in an across-the-board reduction in vehicle valuations, resulting in an underpayment to Plaintiff and each Class member.

59. Given the duties and obligations imposed by the terms and conditions of the form insurance contract, interpreted in light of and (if necessary) conformed to New Jersey law, Defendant's application of the Negotiation Reduction constituted a breach of Defendant's obligations under its insurance contracts.

60. Plaintiff and putative members of the Class were damaged by Defendant's breaches of contract in amounts that will be demonstrated according to proof.

61. Plaintiff and putative members of the Class are entitled to compensatory damages, penalties, costs, attorneys' fees, and all other relief allowable by law and/or that this Court deems just and proper.

### COUNT II: VIOLATION OF DUTY OF GOOD FAITH AND FAIR DEALING
**(on behalf of the Valuation Class)**

62. Paragraphs 1–53 are hereby incorporated by reference.

63. Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

64. Defendant's application of an arbitrary and statistically invalid Negotiation Adjustment was made in bad faith for no purpose other than to minimize Defendant's payment obligations under its insurance contracts.

65. As a result, Plaintiff and members of the putative Valuation Class are entitled to compensatory damages, along with all penalties, attorneys' fees, costs, expenses, and any other relief allowable by law and/or that this Court deems just and proper.

**WHEREFORE**, Plaintiff, individually, and on behalf of the Class that include all other persons similarly situated, prays that State Farm Indemnity Company be duly cited and served with this Petition, be required to appear and answer the same, and after due proceedings had, that there by judgment rendered herein in favor of Plaintiff and the Class, and against Defendant as follows:

- a) For an order certifying this action as a class action on behalf of the Class, with Plaintiff serving as representative of the Class and with the undersigned serving as Counsel for the Class;
- b) For notice to be sent to the Class in a form and manner approved by the Court and comporting with due process;
- c) For an award of compensatory damages in amounts owed pursuant to the policies of insurance and New Jersey law;
- d) For all penalties, expenses, and relief allowable by law;

 e)  For all other damages according to proof;

 f)  For an award of attorneys' fees and expenses;

 g)  For costs of suit incurred herein;

 h)  For pre-judgment and post-judgment interests on any amounts awarded; and

 i)  For such other general and/or equitable relief to which the Plaintiff and/or the Class may be entitled that this Court deems just and proper.

### JURY DEMAND

Plaintiff demand trial by jury on all issues so triable.

          CARELLA, BYRNE, CECCHI,
          OLSTEIN, BRODY & AGNELLO, P.C.
          Attorneys for Plaintiff

          By: /s/ James E. Cecchi
            JAMES E. CECCHI

Dated: October 18, 2022

          Edmund A. Normand
          Joshua R. Jacobson
          NORMAND PLLC
          3165 McCrory Place, Ste. 175
          Orlando, FL 32803
          (407) 603-6031

          ***Attorneys For Plaintiff And Proposed Class***