UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Halimah Muhammad,<br>Individually and On Behalf of<br>All Others Similarly Situated,<br><br>        *Plaintiff*,<br><br>   v.<br><br>State Farm Indemnity Company,<br><br>       *Defendant*. | Civil Action No. 22-<br>6149(MEF)(MAH)<br><br><br>__OPINION__ |

<u>Table of Contents</u>

I.        <u>Background</u>
II.       <u>The First-Filed Rule</u>
          A.  <u>History</u>
          B.  <u>Purpose</u>
          C.  <u>Scope: A Three-Prong Test And An Equitable Test</u>
          D.  <u>Remedy</u>
III.      <u>The Court's Approach</u>
IV.       <u>Prong One: Same Issue</u>
V.        <u>Prong Two: Same Parties</u>
VI.       <u>Prong Three: Chronology</u>
VII.      <u>Equity: The First-Filed Rule Applies</u>
VIII.     <u>The Case Will Be Stayed</u>
IX.       <u>Conclusion</u>

\*      \*      \*

A car owner made an insurance claim and got a lower pay-out than she expected.

The car owner then sued her insurance company, claiming the company's method for calculating the pay-out was illegal.  The lawsuit was filed as a putative class action.

Seven months earlier, a similar lawsuit had been filed, also as a putative class action, in federal court in Illinois.

The insurance company has now filed a motion to dismiss, citing the first-filed rule.

The motion is denied, though the Court will stay this case.

*     *     *

## I.   Background

As noted, there are two federal court cases in play here.

The Illinois putative class action was filed on March 18, 2022. See Williams v. State Farm Mut. Auto. Ins., 1:22-cv-1422, Docket Entry 1.

And this putative class action was filed in New Jersey on October 18, 2022.  See Complaint, Docket Entry 1.

The core allegation in each case: the relevant insurance contracts (issued by the same insurer) promised to pay "actual cash value" when a car was a "total loss" wreck, but the insurer unlawfully calculated actual cash value using a "negotiation adjustment."  Compare Amended Complaint[1] ¶¶ 1-4, 6-7, with Williams First Amended Complaint ¶¶ 1-4, 6-7, 11-12.[2]

The insurance company ("the Defendant"[3]) has moved to dismiss this case because it was initiated after the Illinois case. Dismissal is warranted, the Defendant argues, under the first-filed rule.

---

[1]  As used here, "Amended Complaint" is the operative complaint in this case, the one pending in New Jersey.

[2]  The details of the cases are discussed as they become relevant, mainly in Part IV and Part V.

[3]  The Defendant is State Farm Indemnity Company.  The named plaintiff, Halimah Muhammad, is referred to from here as "the Plaintiff."

That motion is now before the Court.

To start analyzing the motion, the Court describes the first-filed rule (Part II) and then explains how it will proceed in light of it (Part III).

## II.   **The First-Filed Rule**

The same lawsuit may be filed in different courts.  A plaintiff, for example, may sue in federal court in Connecticut, and the opposing party may then turn around and press the same issue in a lawsuit in federal court in New Jersey.

When this happens: what to do?

The basic answer was provided by Chief Justice Marshall.  "In all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it."  Smith v. McIver, 22 U.S. 532, 535 (1824).

This is the first-filed rule.

### A. **History**

As a matter of history, the rule developed in two contexts that routinely spun off "cases of concurrent jurisdiction."  Id.

First, the first-filed rule was often applied where the two courts with jurisdiction were one court of law and one court of equity.  See, e.g., id.  That was the situation that prompted Chief Justice Marshall to invoke the rule in Smith v. McIver. See id.

And second, the rule was often invoked where the relevant courts were one state court and one federal court.  See, e.g., Harkrader v. Wadley, 172 U.S. 148, 164 (1898) ("when a state court and a court of the United States may each take jurisdiction of a matter, the tribunal where jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed and the jurisdiction involved is exhausted"); see also Peck v. Jenness, 48 U.S. 612, 624 (1849) (between a state and federal court "where the jurisdiction is concurrent, the one which first attaches will retain it"); cf. Ex Parte Young, 209 U.S. 123, 161-62 (1908) ("When . . . [a] proceeding is brought to enforce an alleged unconstitutional statute, which is the subject-matter of inquiry in a suit already pending in a

3

Federal court, the latter court, having first obtained
jurisdiction over the subject-matter, has the right . . . to
hold and maintain such jurisdiction, to the exclusion of all
other courts, until its duty is fully performed.").

Today, the first-filed rule is typically applied to determine
which case gets priority as between cases pending in two lower
federal courts.  See E.E.O.C. v. Univ. of Pa., 850 F.2d 969, 971
(3d Cir. 1988).

That is the context here, and it is the Court's focus going
forward.[4]

---

[4]  Three points.

First, the modern first-filed rule, as noted, typically applies
when multiple cases are pending in different federal courts.
But the modern first-filed rule grew out of the law/equity and
federal/state contexts described in the text.  For example, the
Third Circuit articulated the modern federal/federal first-filed
rule in 1941.  See E.E.O.C., 850 F.2d at 971 (describing the
rule as having been "adopted" in Crosley, 122 F.2d at 930).  In
articulating the rule, the Third Circuit relied on Smith v.
McIver, 22 U.S. at 533, Chief Justice Marshall's law/equity-
focused opinion, as well as a set of 19th century English
decisions that also came out of the law/equity context.  See
Crosley, 122 F.2d at 927-930.  Another example: the 1941 Third
Circuit case leaned on "direct authority," id. at 929, from a
then-recent Fifth Circuit case, In re Georgia Power Co., 89 F.2d
218 (5th Cir. 1937).  And In re Georgia Power Co. looked to
Harkrader, 172 U.S. at 148, a Supreme Court opinion that invoked
the first-filed rule in a federal/state context.  See id. at
221.

Second, there are some other contexts in which the first-filed
rule has been applied.  One example: where federal tribunals
have concurrent jurisdiction over a single criminal defendant.
See, e.g., Ex Parte Johnson, 167 U.S. 120, 125 (1897); see also
Harkrader, 172 U.S. at 148; Ex Parte Young, 209 U.S. at 161-62.
Another example: where multiple cases that are based on in rem
jurisdiction are pending.  See, e.g., Taylor v. Carryl, 61 U.S.
583 (1857).  The use of the first-filed rule in these contexts

### B. **Purpose**

The first-filed rule serves three core purposes.

First, it "avoid[s] burdening the federal judiciary." E.E.O.C., 850 F.2d at 977; see also Crosley, 122 F.2d at 930 ("several decisions . . . may require separate appeals to different circuit courts of appeals"); 17 Moore's Federal Practice ¶ 111.13[1][o][ii][A] (2023).

Second, the rule "prevent[s] the judicial embarrassment of conflicting judgments." E.E.O.C., 850 F.2d at 977; see also 17 Moore's ¶ 111.13[1][o][ii][A].

And third, it protects parties from "the vexation of subsequent litigation over the same subject matter." Chavez v. Dole Food Co., Inc., 836 F.3d 205, 216 (3d Cir. 2016) (quoting Crosley, 122 F.2d at 930).

### C. **Scope: A Three-Prong Test And An Equitable Test**

As between co-equal federal courts, when does the first-filed rule apply?  Three conditions must be met, and then an overarching equitable one.

---

does not seem to have meaningfully influenced the development of the modern federal/federal first-filed rule.

Third, note that in the federal/state context, the first-filed rule presents a range of special complexities.  These are related, for example, to: the "supreme" status of federal law under Article VI of the United States Constitution, see generally Mculloch v. Maryland, 17 U.S. 316, 327 (1819), the statutory limits on a federal court's power to enjoin state courts, see Crosley, 122 F.2d at 929, and the various abstention doctrines, see, e.g., Railroad Comm. of Tex. v. Pullman Co., 312 U.S. 496 (1941), which themselves play a central role in telling a federal court when to hold off in favor of a state tribunal. Cf. James C. Rehnquist, Taking Comity Seriously: How to Neutralize the Abstention Doctrine, 46 Stan. L. Rev. 1049, 1104 (1994).  The Court here zeroes in on the federal/federal first-filed rule, and expresses no opinion on the rule outside of this context.  Cf. Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am., 651 F.2d 877, 887 n.10 (3d Cir. 1981).

First, the cases in play have to concern the same issues.  See Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., 502 F. App'x 201, 205 (3d Cir. 2012); E.E.O.C., 850 F.2d at 971.

Second, the parties need to be the same.  See Honeywell Int'l Inc., 502 F. App'x at 205; E.E.O.C., 850 F.2d at 971.

And third, the case to be dismissed, transferred, or stayed must be the second-filed case.  See id.; see also Chavez, 836 F.3d at 215-17; Honeywell Int'l Inc., 502 F. App'x at 205; Grider v. Keystone Health Plan Cent., Inc., 500 F.3d 322, 333 n.6 (3d Cir. 2007).

After all this, the Court then has equitable discretion to apply the rule, or decline to.  See E.E.O.C., 850 F.2d at 976-77.

### D. Remedy

What happens when the first-filed rule is applied?

The first-in-time case continues, and the second-in-time case is dismissed, transferred, or stayed.  See E.E.O.C., 850 F.2d at 977; Chavez, 836 F.3d at 210.

## III.   The Court's Approach

As noted, the test for whether the first-filed rule applies has three prongs, and then an equitable component.  See Part II.C.

The Court analyzes each prong one at a time (in Parts IV, V, and VI), and also assesses whether the first-filed rule should be applied as a matter of equity (in Part VII), and what remedy is appropriate (in Part VIII).

The Court's conclusion: the first-filed rule applies and this case should be stayed.

## IV.   Prong One: Same Issue

As noted, the first-filed rule applies if a three-prong test is satisfied.  Take the first prong: whether the relevant cases concern the same issues.  See Honeywell Int'l Inc., 502 F. App'x at 205; E.E.O.C., 850 F.2d at 971.

Here, they do.

Both cases concern damaged cars that were insured by the Defendant, and claims for a pay-out that were then pressed by

6

various insureds.  Compare Williams First Amended Complaint ¶ 32, with Amended Complaint ¶ 31.

In each case, the Defendant declared the cars were a "total loss."  Compare Williams First Amended Complaint ¶ 32, with Amended Complaint ¶ 31.

And in each case, having done so, the Defendant was required to pay the Plaintiff the "actual cash value" of the cars, and allegedly calculated actual cash value by applying a "negotiation adjustment."  Compare Williams First Amended Complaint ¶¶ 2, 32, with Amended Complaint ¶¶ 22, 33.

Finally, in both cases the plaintiffs allege that reducing the actual cash value by the negotiation adjustment was unlawful because, among other things, it violated the plaintiffs' insurance contracts with the Defendant.  Compare Williams First Amended Complaint ¶¶ 2-3, 52-54, 93-100, with Amended Complaint ¶¶ 7-8, 28-29, 33, 56-63.

There are some small differences between the allegations in the cases --- more on this in a moment.

But as to the core issue --- was it lawful for the Defendant to apply a negotiation adjustment? --- the "factual allegations underlying the[] claims are exactly the same."  Catanese v. Unilever, 774 F. Supp. 2d 684, 689 (D.N.J. 2011); see also Granillo v. FCA U.S. LLC, 2016 WL 8814351, at *4 (C.D. Cal. Jan. 11, 2016); Worthington v. Bayer Healthcare, LLC, 2012 WL 1079716, at *4 (D.N.J. Mar. 30, 2012).

This checks the "same issue" box, and satisfies the first prong of the first-filed test.  See Catanese, 774 F. Supp. 2d at 689; Granillo v. FCA U.S. LLC, 2016 WL 8814351, at *4 (C.D. Cal. Jan. 11, 2016); Worthington, 2012 WL 1079716, at *4; Tekno Prods., Inc. v. Glove Trends Inc., 2019 WL 7184544, at *7 (D.N.J. Dec. 26, 2019); Mahmoud v. Rite Aid Corp., 2012 WL 3560645, at *4 (D.N.J. Aug. 16, 2012).

Against this conclusion, the Plaintiff argues the issues do not count as the same because while the cases overlap, the Illinois case is broader.  It includes a proposed nationwide class, while the New Jersey case only has a proposed New Jersey class.  See Plaintiff's Sur-Reply at 4-6.  And while both cases press breach of contract and duty of good faith and fair dealing claims,

7

additional claims are made in the Illinois case (fraud, unjust enrichment, a request for a declaratory judgement, and violations of state consumer fraud statutes). See id. at 4-5.

This argument is not persuasive.

The reason: to establish that two cases involve the same issues, only a "high degree of similarity between the first-filed action and the later-filed case" is required. Mazzei v. Heartland Payment Sys., LLC, 2023 WL 6121318, at *4 (D.N.J. Sept. 19, 2023); see also Grant v. LM General Ins. Co., 2023 WL 5105158, at *3 (W.D. Pa. Aug. 9, 2023); MacLean v. Wipro Ltd., 2020 WL 7090746, at *7 n.4 (D.N.J. Dec. 4, 2020); Worthington, 2012 WL 1079716, at *7; Abushalieh v. Am. Eagle Express, Inc., 716 F. Supp. 2d 361, 366 (D.N.J. 2010); Catanese, 774 F. Supp. 2d at 687; Nature's Benefit, Inc. v. NFI, 2007 WL 2462625, at *3 (D.N.J. Aug. 27, 2007); Baatz v. Columbia Gas Transmission, LLC, 814 F.3d 785, 792 (6th Cir. 2016); Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa., 713 F.3d 71, 78 (11th Cir. 2013); In Re Spillman Development Grp., Ltd., 710 F.3d 299, 307 (5th Cir. 2013); Opulent Treasures, Inc. v. Ya Ya Logistics, Inc., 2023 WL 3688078, at *2 (M.D. Fla. May 26, 2023); Masluf Realty Corp. v. Markel Ins. Corp., 2014 WL 1278102, at *2 (E.D.N.Y. Mar. 27, 2014); Karim-Seidou v. CMA/CGM Am., LLC-New York, 2023 WL 6144997, at *1 (S.D.N.Y. Sept. 20, 2023); PETA v. Beyond the Frame, Ltd., 2011 WL 686158, at *2 (C.D. Cal. Feb. 16, 2011); see also 17 Moore's ¶ 111.13[1][o][ii][A] (rule applies "in cases involving . . . substantially similar . . . issues").

In keeping with this principle, "subject matter is the key; exact identity of claims is not required." Catanese, 774 F. Supp. 2d at 689; see also Tekno Prods., Inc., 2019 WL 7184544, at *7; Grodko v. Teva Pharma. Indus. Ltd., 2018 WL 10847659, at *4-5 (E.D. Pa. Apr. 10, 2018); Brocq v. Lane, 2017 WL 1281129, at *2 (N.D. Tex. Apr. 6, 2017); Sinclair Cattle Co., Inc. v. Ward, 80 F. Supp. 3d 553, 560 (M.D. Pa. 2015); Worthington, 2012 WL 1079716, at *5-6; Panitch, 2017 WL 1333285, at *4; Mahmoud, 2012 WL 3560645, at *4; Ivy Drivy, Inc. v. Zanfel Labs., Inc., 2009 WL 1851028, at *5 (D.N.J. June 24, 2009); Granillo, 2016 WL 8814351, at *4; Nature's Benefit, Inc., 2007 WL 2462625, at *1, 3, 5; Opulent Treasures, Inc., 2023 WL 3688078, at *3; Iglesias v. Ariz. Beverages USA, LLC, 2023 WL 6795416, at *5 (N.D. Cal. Oct. 13, 2023); Preci-Dip, SA v. Tri-Star Elec. Int'l, Inc.,

8

2008 WL 5142401, at *2 (N.D. Ill. Dec. 4, 2008); Old Republic
Nat'l Tire Ins. v. Transcontinental Title Co., 2007 WL 2915171,
at *3 (E.D. Va. Oct. 4, 2007); Jumapao v. Washington Mutual
Bank, F.A., 2007 WL 4258636, at *1-3 (S.D. Cal. Nov. 30, 2007).

This is dispositive.

Here, there is a "high degree of similarity between the first-
filed action and the later-filed case." Mazzei, 2023 WL
6121318, at *4.  That is "the key[,]" and "exact identity"
between the Illinois and New Jersey cases is not required.
Catanese, 774 F. Supp. 2d at 689.

To be sure, the "high degree of similarity" test has been
explicitly invoked largely by district courts, as cited above,
and neither the Supreme Court nor the Third Circuit has directly
weighed in on whether "exact identity" between cases is needed
to trigger the first-filed rule.

But no matter, for five reasons.

First, the above-referenced court cases are no here-and-there
smattering.  Rather, there are many of them and they are from
around the country.  They articulate the consensus view as to
federal law in this area.[5]

Second, the view that only a "high degree of similarity" is
required squares with the foundational Third Circuit cases.

Take Crosley.  The first-filed rule was applied there by the
Third Circuit as between two sets of patent infringement cases.
See 122 F.2d at 926-27.  The first case covered 20 patents, and
the second-filed cases covered 15 of the 20.  See id.  There was
no "exact identity," Catanese, 774 F. Supp. 2d at 689, between
the cases.  The first-filed case was broader than the second-
filed case, and fully subsumed it.

---

[5]  A caveat.  Some cases suggest that complete identity of issues
may indeed be necessary when the relevant cases are not putative
class actions.  See, e.g., Coyoy v. United States, 526 F. Supp.
3d 30, 43 (D.N.J. 2021).  But whatever the merits of this
approach, it does not purport to apply when the relevant cases
are brought as putative class actions, as they are here.  See,
e.g., Mazzei, 2023 WL 6121318, at *5; MacLean, 2020 WL 7090746,
at *7.

Now consider E.E.O.C. v. Univ. of Pa.  There, the first-filed case sought a declaratory judgment and an injunction, all to preempt an agency subpoena that was soon-to-be issued.  See 850 F.2d at 973.  And the first-filed case also pressed more general constitutional and Administrative Procedure Act claims against the agency.  See id.  The second case was narrower.  It concerned only enforcement of the subpoena.  See id.  The E.E.O.C. Court did not in the end apply the first-filed rule because of an unrelated exception.  See id. at 977.  But the Court made clear that the rule would otherwise have applied. See id. at 976.

Bottom line: in both Crosley and E.E.O.C., the Third Circuit held that the first-filed rule was triggered where the first case was broader than the second one, and indeed where the first case fully subsumed the second case.  But that is precisely when the Plaintiff says the first-filed rule does not apply.  And more generally, Crosley and E.E.O.C. provide strong support for the principle that what is needed for the first-filed rule is a high degree of similarity between cases, not a precise carbon copy.

A third point: the Court has found various court of appeals decisions that are like Crosley and E.E.O.C., in which the first-filed rule was applied as between cases that have a close similarity to one another, even though one case is broader than the other.  These cases --- from the Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits --- are evidence of a national consensus that closely similar is enough to trigger the first-filed rule, and "exact identity," Catanese, 774 F. Supp. 2d at 689, is not required.  The cases: Emps. Ins. of Wausau v. Fox Ent. Grp., Inc., 522 F.3d 271, 274-75, 278 (2d Cir. 2008) (second case broader, first-filed rule applied); Manuel v. Convergys Corp., 430 F.3d 1132, 1134, 1136 (11th Cir. 2005); (second case broader, not an abuse of discretion for the district court to apply the first-filed rule); Zide Sport Shop of Ohio v. Ed Tobergte Assocs., Inc., 16 F. App'x 433, 435-36, 438 (6th Cir. 2001) (second case broader, first-filed rule applied but not an abuse of discretion for the district court to decline to apply the rule); Baatz, 814 F.3d at 792 (first case broader, first-filed rule applied); Learning Network, Inc. v. Discovery Commc'ns, Inc., 11 F. App'x 297, 299-300, 302 (4th

Cir. 2001) (second case broader, first-filed rule applied);
Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 601-602,
606 (5th Cir. 1999) (second case broader, first-filed rule
applied); Nw. Airlines, Inc. v. Am. Airlines, 989 F.2d 1002,
1003-04, 1007 (8th Cir. 1993) (second case broader, first-filed
rule applied); Pacesetter Sys., Inc. v. Medtronic, Inc., 678
F.2d 93, 94-96 (9th Cir. 1982) (first case broader, first-filed
rule applied); cf. Milwaukee Gas Specialty Co. v. Mercoid Corp.,
104 F.2d 589, 590-91 (7th Cir. 1939) (first case sought damages
for patent infringement, second case sought a declaratory
judgement, first-filed rule applied).

A fourth point.  As noted, the first-filed rule emerged from
various contexts in which concurrent jurisdiction has been the
historical norm.  See Part II.A; see also footnote 4.  For
example, Chief Justice Marshall's 1824 opinion in Smith v.
McIver is the cornerstone of the first-filed rule, and it
concerned one case in a court of law and another in a court of
equity.

But situations of that kind --- one case in law, one in equity -
-- involved, almost by definition, cases that lacked "exact
identity," Catanese, 774 F. Supp. 2d at 689, because they
pressed different legal theories.  And those differences were no
impediment to applying the first-filed rule.

To see the point, look to some of the English cases cited by the
Third Circuit, see Crosley, 122 F.2d at 927-928, as foundational
examples of the first-filed doctrine.

One is Reynolds v. Nelson, 56 Eng. Rep. 1101 (1821).  There, the
first-filed rule was applied, even though one case sought
specific performance of a contract, and the other sought damages
for failure to perform the contract.  See id. at 1101.  Same
thing in Frank v. Basnett, 39 Eng. Rep. 1080 (1835).  There, the
first-filed rule was applied, but again: different legal
theories were in play.  See id. at 1080.  One case sought
specific performance of an agreement to convey land on which one
party had agreed to build a bridge.  Another case sought damages
for failure to build the bridge.  See id.

Consider a final example: Beckford v. Kemble, 57 Eng. Rep. 3
(1822).  The first-filed rule was applied there, too.  And
again: the underlying cases pushed forward on different

theories.  One case sought a decree directing "the taking of accounts" to determine the amount needed to redeem a mortgage. See id.  The other sought to foreclose the mortgage.  See id. at 4.

The point: if "exact identity," Catanese, 774 F. Supp. 2d at 689, was required, the first-filed rule could not apply where one case sought a remedy at law (like damages) and one sought a remedy in equity (like an injunction).  But the first-filed rule has been applied in such contexts, including by the United States Supreme Court, and in the cornerstone English cases that, per the Third Circuit, formed the basis for the modern first-filed doctrine.

A fifth and final point.  Applying the rule as between cases that are closely similar to each other, but not perfect mirror images, serves the underlying purposes of the first-filed rule.

To see how, take the cases here as an example.

Consider what would happen if, as the Plaintiff argues, the first-filed rule could not be applied because the Illinois case is somewhat broader than the New Jersey case.  Both courts, in Illinois and New Jersey, would then have to supervise discovery as to the breach of contract and duty of good faith and fair dealing claims, and that would likely involve many of the same witnesses and documents.  Both courts would have to decide whether to certify a nearly identical class --- the class in this case and the New Jersey sub-class in the Illinois case. And both courts would have to decide if applying the negotiation reduction unlawfully breached the relevant insurance contracts and the duty of good faith and fair dealing.

In short: two courts would work through the same questions, where one could have.

This would not be consistent with the purposes of the first-filed rule.  See Part II.B.

It would not be efficient.  See E.E.O.C., 850 F.2d at 977 (one purpose of the first-filed rule: to preserve judicial resources).

It would open the door to different courts reaching different decisions.  See id. (another purpose of the rule: to prevent inconsistent judgements).

It would burden the Defendant, by requiring it to litigate the same questions twice, before two different courts.  See id. (an additional purpose of the rule: to prevent a party from wasting resources re-litigating the same issue).[6]

In sum: the first-filed rule applies when the underlying cases raise closely similar factual and legal issues.  A precise and total overlap between the cases is not required.  That is the consensus of the federal courts that have spoken explicitly to the issue.  That is the approach that is reflected in the decisions of the Third Circuit, as well as the decisions of the Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits.  And that is the approach that is consistent with both the doctrine's historical roots in concurrent law/equity jurisdiction and its modern purposes.

And here, as noted above, there is more than enough similarity between the Illinois case and this one.

## V.  **Prong Two: Same Parties**

Turn now to the second prong of the first-filed test.  See Part II.C.

Do this case and the Illinois case involve the same parties?

The Court's conclusion: yes.

---

[6]  As to the purposes of the rule, note another problem.  If "exact identity," Catanese, 774 F. Supp. 2d at 689, were strictly required, the first-filed rule could be readily evaded. Imagine a franchisor sues a franchisee for (1) breach of contract, (2) unjust enrichment, (3) and breach of the duty of good faith and fair dealing.  This is a standard suite of claims in a business dispute, and as a practical matter the claims often involve largely overlapping damages.  Imagine, now, that the franchisor sues again in another court, this time just for unjust enrichment and breach of the duty of good faith and fair dealing.  And imagine the franchisor sues a third time, this time just for breach of the duty of good faith and fair dealing. The underlying purposes of the first-filed rule, see Part II.B, suggest it should have a role to play in this hypothetical situation.  But under an "exact identity" approach, the rule would get little traction.  The three cases, after all, are a bit different one from the next.

13

When, as here, the underlying cases are putative class actions, "classes, and not the [named] class representatives, are compared."[7]  Owen v. Nestle Healthcare Nutrition, Inc., 2023 WL 2367983, at *2 (D.N.J. Mar. 6, 2023); accord Baatz, 814 F.3d at 790-91; Grant, 2023 WL 5105158, at *4; Gonzalez v. Homefix Custom Remodeling, Corp., 2023 WL 3115585, at *4 (E.D. Va. Apr. 26, 2023); MacLean, 2020 WL 7090746, at *8; Cox v. Air Methods Corp., 2018 WL 2437056, at *4 (S.D. W. Va. May 30, 2018); Panitch, 2017 WL 1333285, at *4; Worthington, 2012 WL 1079716, at *7; Catanese, 774 F. Supp. 2d at 688; Abushalieh, 716 F. Supp. 2d at 366; Ross v. U.S. Bank Nat'l Ass'n, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008); Adoma v. Univ. of Phoenix, Inc., 711 F. Supp. 2d 1142, 1147-48 (E.D. Cal. 2010); Fuller v. Abercrombie & Fitch Stores, Inc., 370 F. Supp. 2d 686, 689-90 (E.D. Tenn. 2005); see also 17 Moore's ¶ 111.13[1][o][ii][A].

Here, there is tight overlap between the proposed class in New Jersey and the proposed New Jersey sub-class in the Illinois case.  Both classes would encompass New Jersey residents who received total-loss pay-outs from the Defendant, that were calculated using a negotiation adjustment.  Compare Williams First Amended Complaint ¶ 66, with Amended Complaint ¶ 47.[8]

At their core, the two proposed classes "purport to represent the same group of injured parties against the same defendant." Abushalieh, 716 F. Supp. 2d at 366.  The proposed class in the Illinois case would "entirely encompass" the proposed class here.  Grant, 2023 WL 5105158, at *4.  And the named plaintiffs here "would be parties to both actions."  Baatz, 814 F.3d at 790-91.

---

[7]  Whether the plaintiffs are the same is the only question on the table.  This is because the Plaintiff does not argue the defendants in the two cases are different.  In New Jersey, the defendant is State Farm Indemnity Company.  In Illinois, the defendant is State Farm Mutual Automobile Insurance Company. These names are different.  But the New Jersey Defendant says that it believes an error was made, and that it is the defendant in both cases.  See Defendant's Sur-Reply at 6 n.3.

[8]  Also: the proposed class in New Jersey would be essentially subsumed in the proposed nationwide class in Illinois.  Compare Amended Complaint ¶ 47, with Williams First Amended Complaint ¶ 65.

This establishes that the plaintiffs in Illinois and New Jersey count as the same.

But the Plaintiff has a counterargument: "classes, and not the class representatives, are compared," Owen, 2023 WL 2367983, at *2, but only after a class has been certified, and that has not happened yet in either case.  See Plaintiff's Sur-Reply at 5-6.

But this argument runs aground on the caselaw.

The majority of district courts in the Third Circuit focus on classes, not named class representatives, even before class certification.  See Mazzei, 2023 WL 6121318, at *5; Grant, 2023 WL 5105158, at *4; MacLean, 2020 WL 7090746, at *8; Owen, 2023 WL 2367983, at *2; Franceski v. Freedom Mortg. Corp., 2019 WL 2636740, at *5 (D.N.J. June 27, 2019); Panitch, 2017 WL 1333285, at *4; Worthington, 2012 WL 1079716, at *7; Catanese, 774 F. Supp. 2d at 688; Abushalieh, 716 F. Supp. 2d at 366.

District courts outside the Third Circuit also routinely take this approach.  See Ellis v. State Farm Mut. Auto. Ins., 6:22-cv-010050-RBD-DCI ECF. No. 68 (M.D. Fla. Aug. 16, 2023); Yancey v. State Farm Mut. Auto. Ins., 2023 WL 5019769, at *2-3 (E.D. Mo. Aug. 7, 2023); Williams, 2023 WL 4106067, at *12; Gonzalez, 2023 WL 3115585, at *4; Gray v. Twitter, Inc., 2022 WL 2872244, at *2 (W.D. Wash. July 21, 2022); Santana v. Cavalry Portfolio Servs., LLC, 2019 WL 6173672, at *4 (S.D.N.Y. Nov. 19, 2019); Doe v. Iowa Health Sys., 2019 WL 13217438, at *5 (S.D. Iowa Sept. 26, 2019); Cox, 2018 WL 2437056, at *4; Yao v. Ulta Beauty Inc., 2018 WL 4208324, at *3 (S.D. Fla. Aug. 8, 2018); Bedwell v. Braztech Int'l, LC, 2017 WL 2450160, at *3 n.34 (D. Alaska June 6, 2017); Hilton v. Apple Inc., 2013 WL 5487317, at *7 (N.D. Cal. Oct. 1, 2013); Ruff v. Del Monte Corp., 2013 WL 1435230, at *3 (N.D. Cal. Apr. 9, 2013); Adoma, 711 F. Supp. 2d at 1147-48; Fuller, 370 F. Supp. 2d at 689-90.

And the only court of appeals to address the question has landed in the same place.  See Baatz, 814 F.3d at 790-91.[9]

---

[9]  The Plaintiff cites five cases that go the other way.  See Plaintiff's Sur-Reply at 5.  But this does not tip the scales given the number of cases on the other side of the ledger. Moreover, three of the five cases cited by the Plaintiff discuss lack of class certification as one reason among several not to apply the first-filed rule.  See Chusid v. Town Sports Int'l

Bottom line: even before class certification, the first-filed
rule is triggered when cases involve proposed classes that
closely overlap with one another, and that is the case here.[10]

---

LLC, 2019 WL 8105292, at *2-4 (D.N.J. Oct. 18, 2019); Gibbs v.
Haynes Invs., LLC, 368 F. Supp. 3d 901, 915-16 (E.D. Va. 2019);
Martin v. Medicredit, Inc., 2016 WL 6696068, at *5 (E.D. Mo.
Nov. 15, 2016). It is not clear how those cases might have come
out if (as here) everything pointed toward applying the first-
filed rule except that the class certification decision was not
yet been made. Finally, the majority approach described in the
text generally furthers the purposes of the first-filed rule.
See, e.g., Baatz, 814 F.3d at 791.

[10] At one point, the Plaintiff suggests that two cases may not
count as having the same parties if one proposed class of
plaintiffs is broader than the other proposed class. See
Plaintiff's Sur-Reply at 4-6. And here, the Plaintiff notes,
one of the proposed classes in the Illinois case (the nationwide
class) is broader than, and subsumes, the proposed class in the
New Jersey case. See id. This argument may not be important as
a practical matter, because, as noted in the text, the New
Jersey sub-class in Illinois is largely co-terminus with the
proposed class in New Jersey. But more fundamentally, this
argument --- that parties are not the same when the proposed
class in one case is broader than, and subsumes, the proposed
class in another --- is at odds with the caselaw. See Grant,
2023 WL 5105158, at *4 ("the proposed class [in the first case]
. . . would include all members of the proposed class [in the
second case]. . . such that the identity of the parties favors
invoking the first-filed rule"); Hubbard v. Papa John's Int'l,
Inc., 2019 WL 6119242, at *3 (W.D. Ky. Nov. 18, 2019) ("if one
class is included in the second class, the plaintiffs
substantially overlap, even if the second class has additional
members") (cleaned up). "[I]t is of no consequence that one
putative class is narrower than the other." Hubbard, 2019 WL
6119242, at *3 (cleaned up). The key point: the New Jersey
proposed class the Plaintiff seeks to represent would be
encompassed by the broader Illinois nationwide proposed class.
See generally Baatz, 814 F.3d at 790-91; Owen, 2023 WL 2367983,
at *2; Havassy v. Keller Williams Realty, Inc., 2022 WL 4586126,
at *3 (E.D. Pa. Sept. 29, 2022); Zimmer v. Dometic Corp., 2018
WL 1135634, at *3 (C.D. Cal. Feb. 22, 2018); Vester v. Werner
Enters. Inc., 2017 WL 1493673, at *4 (C.D. Cal. Apr. 24, 2017);
see also In Re Georgia Power Co., 89 F.2d at 219-21 (applying
first-filed rule as to two cases --- which had an overlapping

## VI.  __Prong Three: Chronology__

Consider, finally, the third prong of the first-filed test.  See Part I.C.

Was this case filed in New Jersey after the Illinois case?

The question seems to answer itself.  The Illinois case was filed on March 18, 2022.  This case was filed seven months later, on October 18, 2022.

The Plaintiff, though, proposes a different approach.  The Plaintiff notes that the New Jersey sub-class in Illinois did not have a named plaintiff (it was "headless") until February 14, 2023.  See Plaintiff's Sur-Reply at 7.  And the Plaintiff argues that, for the purpose of any comparison with this case, it is February 14, 2023 that should be regarded as the moment when the Illinois case was filed, not March 18, 2022.  See id.

This is a novel argument, that appears to only be addressed in one decided case.

But that one case is the Illinois case.  There, the Court considered the "headless" argument and rejected it, holding that the filing date for the Illinois case (even as to the New Jersey sub-class) was March 18, 2022.  See Williams, 2023 WL 4106067, at *10.

The Court here will defer to the determination made in Illinois.

To see why, step back for a moment.

The first-filed rule potentially kicks in when multiple courts are involved.  Which of those courts should be the one to decide whether the first-filed rule applies?

The decision is generally made by the court where the earliest of the relevant cases was initiated.  See Collegiate Licensing Co. v. Am. Cas. Co. of Reading, 713 F.3d 71, 78 (11th Cir. 2013); Cradle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 605-06 (5th Cir. 1999); Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 628 (9th Cir. 1991); Cessna Aircraft Co. v. Brown,

---

plaintiff, though one of the cases had an additional 18 plaintiffs).  And also see Triangle Conduit & Cable Co. v. Nat'l Elec. Products Corp., 125 F.2d 1008 (3d Cir. 1941), in which the Third Circuit applied the first-filed rule even though Sears Roebuck & Company was only a defendant in one of the two cases.

348 F.2d 689, 692 (10th Cir. 1965); <u>Samsung Elecs. Co.</u> v.
<u>Netlist, Inc.</u>, 2022 WL 3027312, at *3 (D. Del. Aug. 2022); <u>Cisco</u>
<u>Sys., Inc.</u> v. <u>Ramot at Tel Aviv Univ., Ltd.</u>, 2022 WL 16921988,
at *3 (D. Del. Aug. 2022); <u>Sefac USA, Inc.</u> v. <u>Gray Mfg. Co.</u>,
2020 WL 4557062, at *1 n.1 (E.D. Pa. June 16, 2020); <u>Glodeck</u> v.
<u>Richardson</u>, 2020 WL 263476, at *2 (D. Md. Jan. 16, 2020);
<u>Scardino</u> v. <u>Elec. Health Res., LLC</u>, 2016 WL 1321147, at *3
(D.S.C. Apr. 5, 2016); <u>In re HSBC Bank, USA, N.A., Debit Card</u>
<u>Overdraft Fee Litig.</u>, 99 F. Supp. 3d 288, 306 (E.D.N.Y. 2015);
<u>RPost Holdings, Inc.</u> v. <u>Yesware, Inc.</u>, 2014 WL 12712410, at *2
(E.D. Tex. 2014); <u>In Re Checking Account Overdraft Litig.</u>, 859
F. Supp. 2d 1313, 1325 (S.D. Fla. 2012); <u>Daimler Chrysler Corp.</u>
v. <u>General Motors Corp.</u>, 133 F. Supp. 2d 1041, 1044 (N.D. Ohio
2001); <u>Ed Tobergate Assoc., Inc.</u> v. <u>Zide Sport Shop of Ohio,</u>
<u>Inc.</u>, 83 F. Supp. 2d 1197, 1198 (D. Kan. 1999); <u>PAJ, Inc.</u> v.
<u>Yurman Design, Inc.</u>, 1999 WL 68651, at *2 (N.D. Tex. 1999);
<u>Affinity Memory & Micro</u> v. <u>K&Q Enters.</u>, 20 F. Supp. 2d 948, 954
(E.D. Va. 1998); <u>Strook & Strook & Lavan</u> v. <u>Valley Sys., Inc.</u>,
1996 U.S. Dist. Lexis 182, at *14 (S.D.N.Y. Jan. 10, 1996);
<u>Victor Co., L.L.C.</u> v. <u>Ortho Organizers, Inc.</u>, 932 F. Supp. 261,
263 (D. Kan. 1996); <u>Ontel Products, Inc.</u> v. <u>Project Strategies</u>
<u>Corp.</u>, 899 F. Supp. 1144, 1150 n.9 (S.D.N.Y. 1995); <u>Weber-</u>
<u>Stephen Prods. Co.</u> v. <u>Ivy Mar Co.</u>, 1994 WL 11711, at *1 (N.D.
Ill. Jan 13, 1994); <u>Tex. Instruments Inc.</u> v. <u>Micron</u>
<u>Semiconductor, Inc.</u>, 815 F. Supp 994, 999 (E.D. Tex. 1993);
<u>Donaldson, Lufkin & Jenrette, Inc.</u> v. <u>Los Angeles Cnty.</u>, 542 F.
Supp. 1317, 1321 (S.D.N.Y. 1982); <u>cf.</u> <u>Pacesetter Sys., Inc.</u>, 678
F.2d at 96-97.

In short: the first-filed court decides whether the first-filed
rule applies.

This who-decides rule is said to serve three goals: promoting
comity, conserving judicial resources, and preventing
inconsistent judgements. See <u>Cradle Co.</u>, 174 F.3d at 605-06;
<u>Mann Mfg., Inc.</u> v. <u>Hortex, Inc.</u>, 439 F.2d 403, 408 (5th Cir.
1971); <u>Aircraft Co.</u>, 348 F.2d at 692; <u>Sefac USA, Inc.</u>, 2020 WL
4557062, at *1 n.1; <u>Scardino</u>, 2016 WL 1321147, at *3; <u>Daimler</u>
<u>Chrysler Corp.</u>, 133 F. Supp. 2d at 1044; <u>RPost Holdings, Inc.</u>,
2014 WL 12712410, at *2; <u>Tex. Instruments Inc.</u>, 815 F. Supp at
999; <u>Donaldson, Lufkin & Jenrette, Inc.</u>, 542 F. Supp. at 1321.

But the front-end rule (court 1 decides) can only advance these goals if there is also a back-end rule (court 2 must defer in some way to what court 1 has decided). It does not make sense to have the first court determine a question, only to have the second court ignore its work. This would undermine comity, not promote it. It would fritter away judicial resources. And it would invite just what is to be avoided --- conflicting judgements.[11]

Given this backdrop, the Court will defer to the Illinois Court's decision that the Illinois case was filed first. See Williams, 2023 WL 4106067, at *9-10.

First, this issue was fully litigated in the Illinois Court. See Williams Motion to Dismiss, Transfer, or Stay Under the First Filed Rule, Docket Entry 62; Plaintiff's Opposition Brief, Docket Entry 74; Defendant's Reply in Support, Docket Entry 79.

Second, the issue was considered and ruled upon by the Illinois Court. See Williams, 2023 WL 4106067, at *9-10.

Third, the Plaintiff does not cite any cases that tend to suggest the Illinois decision is questionable.

And fourth, there is plainly a great deal to be said for the Illinois Court's ruling.[12]

---

[11] No case seems to explicitly discuss that deference is owed to the court that made the first-filed decision. (Though there are traces of the idea in Pacesetter Sys., Inc., 678 F.2d at 96-97.) There may be no cases because in most circumstances background preclusion rules carry the whole load, by preventing a party from re-litigating (in court 2) what was decided previously (in court 1) about the application of the first-filed rule. Here, though, bread-and-butter preclusion doctrines are not part of the mix. This is because, under background preclusion doctrines, the Plaintiff is not considered a party in the Illinois case, and while there are some exceptions that allow a non-party to not be bound, those do not seem to apply here. See Smith v. Bayer Corp., 564 U.S. 299, 313-15 (2011); see also Peloro v. United States, 488 F.3d 163, 175 (3d Cir. 2007).

[12] Take three examples. First, why focus on the fact that the Illinois action's New Jersey sub-class was "headless" until February 14, 2023? After all, the proposed Illinois nationwide class subsumed any New Jersey sub-class, see Part V, and that Illinois nationwide class had a named plaintiff (a "head[]") as

Bottom line: the Court will defer to the decision in the Illinois case, and therefore holds that case was filed first.[13]

## VII.   Equity: The First-Filed Rule Applies

The first-filed rule applies here.  Same issues.  See Part IV. Same parties.  See Part V.  And one case initiated before the other.  See Part VI.

This is most of the way down the road, but not to the end.

The first-filed rule is "grounded on equitable principles." E.E.O.C., 850 F.2d at 977.  This means that when the rule fits a given circumstance as a formal matter, the Court should still pause --- to consider whether to exercise its discretion and not apply the rule.  See id. at 972; Chavez, 836 F.3d at 210; see generally Part II.C.

Here, there is no reason not to apply the rule.

There is, for example, no suggestion that the Illinois action was filed to box out the New Jersey action.  The former was filed seven months before the latter.  And no one asserts that those who pressed the Illinois action knew that a New Jersey case was waiting in the wings.  See Strategic Benefit Solutions Corp. v. Benefitelect, Inc., 2020 WL 4364329, at *3 (D.N.J. July 29, 2020); Eagle Pharm., Inc. v. Eli Lilly & Co., 2018 WL 3492145, at *4 (D.N.J. July 20, 2018); Synthes, Inc. v. Knapp,

---

of March 18, 2022.  Second, for the purpose of the third (chronology) prong of the first-filed test, why focus on whether there is a named plaintiff and not just on the scope of the proposed class?  After all, for the second (same parties) prong of the first-filed test, the law takes exactly the opposite approach --- looking to the proposed class, not to the named plaintiff.  See Part V.  Third, caselaw tends to cast doubt, at least by implication, on the "headless" argument.  See, e.g., Mattel, Inc. v. Louis Marx & Co., 353 F.2d 421, 422, 424 (2d Cir. 1965) (applying the first-filed rule even though the complaint in the first case was amended after the second case was filed).

[13]  While deference could also buttress this Court's determination that the issues and parties are the same, see Part IV and V, the Illinois Court did not conduct an analysis on these questions because of agreement between the parties.  See Williams, 2023 WL 4106067, at *11.

978 F. Supp. 2d 450, 457 (E.D. Pa. 2013); Koresko v. Nationwide Life Ins., 403 F. Supp. 2d 394, 401 (E.D. Pa. 2005).

That the New Jersey sub-class in Illinois did not initially have a named plaintiff might sometimes sound a warning bell --- suggesting that an under-developed case has been filed too soon, to win a sprint to the courthouse door. But that is not a concern here. There is, for example, nothing threadbare or slapped-together about the initial complaint that was filed in Illinois. It was over 400 pages, and clearly the result of thoughtful work.

In short: this is not the "rare" case, E.E.O.C., 850 F.2d at 976, in which the first-filed rule fits the bill as a formal matter but then must give way on equitable grounds.

## VIII.   **The Case Will Be Stayed**

Given the Court's conclusion that the first-filed rule applies: how to proceed?

Where the rule governs, the Court has discretion "to stay, transfer, or dismiss the case." Chavez, 836 F.3d at 210. The Court "should be careful not to cause unanticipated prejudice to the litigants before it." Id. at 219. To guard against this danger, the Third Circuit has been clear: "in the vast majority of cases, a court . . . should stay or transfer a second-filed suit." Id. at 220.

In light of this, the Court will stay this case.

As in the "vast majority" of cases, it is difficult to "[ ]anticipate[ ]" all of the possible circumstances that might develop. But it is not hard to see some circumstances in which this case might be one to come back to.

Imagine, for example, that the Illinois Court looks to determine, first, whether the proposed nationwide class should be certified. That could well be the most efficient tack to take. But what if the Illinois Court determines that a national class cannot be certified, perhaps because choice of law issues make a broad class too unwieldy? See generally Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 815-20 (1985); see also Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 674 (7th Cir. 2001). At that point, the proposed New Jersey sub-class would be left sitting in Illinois. And it might then make sense, from

21

the litigants' perspectives and from the perspective of the Illinois Court, to go forward with consideration of the proposed New Jersey sub-class in New Jersey, not Illinois.  One way to keep that possibility open is to put this case on ice for now, by staying it.

Are there downsides to this approach?  None that the Defendant has brought up.[14]  And the Court can ensure the Defendant will not run up any meaningful costs here by ordering this case stayed wholly and completely.

**IX.   Conclusion**

For the reasons set out above, the first-filed rule applies and this case will be stayed.

_____
Michael E. Farbiarz, U.S.D.J.
Date: February 28, 2024

---

[14] The plaintiffs in the Illinois case have not weighed in here.

22